United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RESILIENT FLOOR COVERING PENSION FUND, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THREE RIVERS FLOORING, INC., et al.,<br><br>Defendants. | Case No. 18-cv-04480-WHO<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

Plaintiffs Resilient Floor Covering Pension Fund ("the Fund") and the Board of Trustees of the Resilient Floor Covering Trust Fund move for summary judgment against Quality Contracting Services, Inc. ("Quality") and Three Rivers Flooring, Inc. ("Three Rivers"), arguing that defendants are subject to withdrawal liability pursuant to the Multiemployer Pension Plan Amendments Act ("MPPAA"), 29 U.S.C. § 1381 *et seq.* At issue is whether Three Rivers was a successor to Quality that took over with notice of the potential liability of Quality's withdrawal from the Fund, and whether Three Rivers and Quality are liable as alter-egos. I find that there are disputed material issues of fact regarding whether Three Rivers took over all or substantially all of Quality's customer base, and whether Three Rivers and Quality were commonly owned and managed. Accordingly, plaintiffs' motion is DENIED.

**BACKGROUND**

Plaintiffs brought this case on July 24, 2018, claiming that Three Rivers and Quality are subject to withdrawal liability as alter egos, and that Three Rivers is subject to liability as a successor employer pursuant to the MPPAA. Dkt. No. 1. Quality failed to appear and the clerk granted a default against it on November 7, 2018. Dkt. No. 21. However, I denied plaintiffs' motion for default judgment on April 4, 2019 because a default judgment against Quality would

1 necessarily bind Three Rivers and preclude it from disputing the amount of withdrawal liability
2 that it may owe. Dkt. No. 33. On December 4, 2019, plaintiffs filed a motion for summary
3 judgment on both claims. Three Rivers filed an opposition on December 18 and plaintiffs replied
4 on December 24.[1]

**LEGAL STANDARD**

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id.* 324. The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 257 (1986). On summary judgment, the Court draws all reasonable factual inferences in favor of the non-movant. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* (citation omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 242.

**DISCUSSION**

After hearing the arguments of the parties, I find that there are material facts in dispute with respect to both of plaintiffs' causes of action. This matter will proceed to trial.

The cornerstone of the inquiry into whether Three Rivers is liable as a successor to Quality for the purposes of the MPPAA is whether Three Rivers took over the bulk Quality's customer base. *Resilient Floor Covering Pension Tr. Fund Bd. of Trustees v. Michael's Floor Covering,*

---

[1] Quality is in default and did not join in Three Rivers's Opposition. However, Quality is impacted by my decision regardless.

2

*Inc.*, 801 F.3d 1079, 1095-96 (9th Cir. 2015). The evidence here is disputed and unclear. The parties do not dispute that the Collective Bargaining Agreement ("CBA") that Quality entered into prohibited it from working with non-union subcontractors. Nor do they dispute that all of Three Rivers's brokers were also brokers for Quality (or had purchased the assets of a broker for Quality). They do dispute whether Three Rivers serviced non-union customers that Quality was not able to service due to the CBA, thus making it impossible for Three Rivers to "take[] over the economically critical bulk of [Quality's] customer base." *Id.* at 1084.

Three Rivers asserts that "Quality was purportedly no longer allowed to work with non-union brokers such as Sherman Loehr and A&P, etc." Dkt. No. 50 at 24. Rodriguez, Three Rivers's founder, stated that "[u]pon information and belief, on or about July 2014, Plaintiff no longer permitted Quality nor any other companies in Plaintiff's union to work with non-union brokers," Dkt. No. 50-1 ¶ 19, and Paiva (who ran Quality) stated that "[o]n or about 2014, Sam Trejio and Vincent Echeverria, from the local union DC16 informed me that the new collective bargaining agreement would no longer allow companies like Quality to work with non-union brokers as Quality had been." Dkt. No. 50-3 ¶ 27. During oral argument, defendants made a slightly different argument, contending that Three Rivers's customer base was different from Quality's because the brokers, who are able to work with multiple contractors and are not strictly union or non-union, serviced different end-customers for both "union jobs" and "non-union jobs." They stated that Three Rivers's business model was to service end-customers that would not employ union contractors like Quality, and pointed out that between 2010 and 2014, both companies were not only in operation but also grew at the same time.

Plaintiffs contend that Three Rivers and Quality shared a customer base because both companies employed the same brokers. According to plaintiffs, the end-customers are irrelevant because they do not pay Three Rivers and Quality. *Michael's Floor Covering* does not directly define "customer," but suggests that customers are those that contribute to a company's revenue. 801 F.3d at 1097 (discussing utility of "a measure of the billings on the jobs worked for continuing customers by the old and new companies [], as pension fund contributions are usually made based on the total employee hours worked."). It is unclear whether defendants contend that

3

the relevant "customer base" includes the brokers or just the end-customers. There is both a factual and perhaps a legal question as to what impact, if any, the end-customer jobs have on the analysis of "customer base" as contemplated by *Michael's Floor Covering*.

Adding support to defendants' position, they assert that (i) Quality stopped being able to work with its brokers (e.g., Dynamic Commercial Flooring, A&P Floor Company, Sherman-Loehr, and Capital Commercial Flooring) in 2014 because they decided to go "non-union"; (ii) the brokers are hired by end-customers for union and non-union jobs such that the brokers could hire Three Rivers for jobs that Quality could not perform; and (iii) Three Rivers's business model was to service the customers that Quality could not due to the requirements of the brokers or their end-customers and Quality's obligations under the CBA. Plaintiffs' evidence did not address this. And there is a separate issue whether the undisputed facts show that Three Rivers had actual notice of Quality's withdrawal liability prior to the time it became a successor.

For alter-ego liability, there is a material issue of fact regarding common ownership and management. To establish liability pursuant to the "alter-ego" doctrine, plaintiffs must prove "(1) that the two firms have 'common ownership, management, operations, and labor relations,' and (2) that the non-union firm is used 'in a sham effort to avoid collective bargaining obligations.'" *Resilient Floor Covering Pension Fund v. M&M Installation, Inc.*, 630 F.3d 848, 852 (9th Cir. 2010).

The parties dispute whether Quality and Three Rivers have common ownership and management. Some documents filed with the State of California indicate common ownership. *See*, e.g., Dkt. No. 48-7 at 91-92. But Rodriguez, Paiva, and several employees of both Quality and Three Rivers testified that Paiva was the owner of Quality and Rodriguez was the owner of Three Rivers. *See*, e.g., Dkt. No. 48-3 12:22-24; Dkt. No. 48-4 15:9-14, 2:25-26:1; Dkt No. 50-1 ¶¶ 5-6; Dkt. No 50-3 ¶¶ 6-7. Three Rivers presented evidence that the two companies operated alongside one another from 2010 until 2014, either competing against each other or servicing different customers, before Quality went out of business. There is no evidence that Rodriguez received any profits from Quality or that Paiva received profits from Three Rivers, and defendants presented testimony that the parties were unsophisticated. There are triable issues of fact with

4

regard to ownership and management of the companies for the purpose of alter-ego liability.

## CONCLUSION

Because there are triable issues of fact concerning both successor and alter-ego liability, plaintiffs' motion for summary judgment is DENIED. The trial is set for April 6, 2020, to continue through April 8 as needed. The pretrial conference is set for March 23, 2020 at 2:00 pm. If the parties are not available on these dates, they shall contact Ms. Davis at Jean_Davis@cand.uscourts.gov to arrange a telephonic trial setting conference.

**IT IS SO ORDERED.**

Dated: January 29, 2020



William H. Orrick
United States District Judge